## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

JAAN MARION,

     Plaintiff

     v.                            Case No. 1:21-cv-04936-MHC

FLEETCOR TECHNOLOGIES
OPERATING COMPANY, LLC, and
FLEETCOR TECHNOLOGIES INC.,

     Defendants.

_____/

## DEFENDANT'S MOTION TO DISMISS COLLECTIVE ACTION ALLEGATIONS AND INCORPORATED MEMORANDUM OF LAW

Pursuant to Federal Rule of Civil Procedure 12(b)(6) and this Court's inherent authority, Defendant FLEETCOR Technologies Operating Company, LLC ("FLEETCOR, LLC") moves to dismiss Plaintiff's collective action allegations.

## MEMORANDUM OF LAW

Plaintiff Jaan Marion ("Plaintiff") asserts collective action claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, that are substantially similar to the FLSA claims asserted in an earlier-filed putative collective action currently pending in this District, *Morrison v. FLEETCOR Technologies Operating Company, LLC and FLEETCOR Technologies, Inc.,* 1:21-cv-03950-TWT (N.D.

Ga.) (the "*Morrison* litigation").  In both actions, the respective plaintiffs assert claims for unpaid wages under the FLSA on behalf of current and former employees who held (or currently hold) positions handling inbound and/or outbound calls with defendants nationwide (referred to herein as "call center agents").  Plaintiffs in these duplicative actions name the same defendants, FLEETCOR Technologies Operating Company, LLC and FLEETCOR Technologies, Inc. ("FLEETCOR, Inc.") (collectively, the "FLEETCOR Defendants"); seek the same notice to current and former call center agents who worked for defendants at any time within the last three (3) years; and seek the same relief under the FLSA.

Allowing Plaintiff to proceed with his collective action allegations simultaneously with the *Morrison* litigation serves no purpose.  It invites disputes over coordinating collective action certification and notice in each case and confusion for potential opt-in plaintiffs about their legal options.  It also creates a genuine risk of wasting judicial resources, asking the same Court to rule on similar issues involving overlapping cases and many of the same employees.  As a result, Plaintiff's collective allegations should be dismissed under the first-filed rule and this Court's discretion to manage its docket.

# BACKGROUND

## I.  <u>The First-Filed *Morrison* Litigation</u>

On September 24, 2021, Mandy Morrison filed a putative collective action against FLEETCOR, LLC for allegedly violating the FLSA by failing to pay call center agents who worked for FLEETCOR, LLC nationwide for all hours worked, including unpaid overtime compensation.[1]  *Morrison,* 1:21-cv-03950-TWT, ECF No. 1 (N.D. Ga. Sept. 24, 2021).[2]  Morrison amended her complaint on December 7, 2021, to clarify certain allegations and to add FLEETCOR Technologies, Inc. as a defendant.  *Morrison,* 1:21-cv-03950-TWT, ECF No. 28 (N.D. Ga. Dec. 7, 2021). The FLEETCOR Defendants filed an answer to the amended complaint on January 4, 2022, and the pleadings are closed.  *Morrison,* 1:21-cv-03950-TWT, ECF No. 35 (N.D. Ga. Jan. 4, 2022).

Morrison, who worked for FLEETCOR, LLC as a call center agent in Kentucky, requests court-authorized notice under the FLSA's collective action

---

[1] Morrison also asserts class action claims under Kentucky state law on behalf of call center agents in Kentucky for the unpaid wages based on factual allegations exactly the same as those serving the basis of her FLSA claims.

[2] A federal court may take judicial notice of the contents of its own records.  *See Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 322 (2007); *Creme Laboratories, Inc. v. Francine Co*., 425 F.2d 1295, 1296 (5th Cir. 1970) (noting that the "District Court clearly had the right to take notice of its own files and records").

provision to the following individuals:

> *All current and former call center agents who worked for Defendants in the United States at any time within three (3) years preceding the commencement of this action and the date of judgement ("FLSA Collective").*[3]

*Id.* Morrison defines call center agents broadly to include "individuals handling inbound calls and/or making outbound calls." *Morrison,* 1:21-cv-03950-TWT, ECF No. 28 (N.D. Ga. Dec. 7, 2021). Thus far, sixteen (16) individuals have filed consent forms to join the *Morrison* litigation, in addition to Morrison. *Morrison,* 1:21-cv-03950-TWT, ECF Nos. 8, 10, 13, 14, 16, & 27.

On December 16, 2021, the parties submitted the Joint Preliminary Report and Discovery Plan and specifically identified Plaintiff's action as a pending related case. *Morrison,* 1:21-cv-03950-TWT, ECF No. 29 (N.D. Ga. Sept. 24, 2021). The following day, the Court issued a Scheduling Order and the parties are in the process of complying with that Scheduling Order. *Morrison,* 1:21-cv-03950-TWT, ECF Nos. 31 & 32 (N.D. Ga. Sept. 24, 2021). The parties have already engaged in various discussions about the potential for consenting to conditional certification of an FLSA

---

[3] In the amended complaint, Morrison lists as examples over twenty (20) positions falling within this definition. *Morrison,* 1:21-cv-03950-TWT, ECF No. 28 (N.D. Ga. Dec. 7, 2021).

collective and have had numerous discussions regarding settlement and resolution opportunities.

## II.   The Second-Filed, Substantially Overlapping Lawsuit: This Action

Meanwhile, on December 2, 2021, Plaintiff filed his complaint against the FLEETCOR Defendants in this action.  (Dkt. 1).  Like Morrison, Plaintiff alleges that the FLEETCOR Defendants failed to pay current and former employees handling inbound or outbound calls (which he refers to as inside sales representatives) nationwide for all hours worked, including overtime compensation. *Id*.  Significantly, also like Morrison, Plaintiff requests court-authorized notice under the FLSA's collective action provision to the following individuals:

> *All persons who perform(ed) work for FleetCor as an inside sales representative (ISR)* **handling outbound or inbound calls** *at any of its Georgia offices, including Atlanta, and Norcross, Wichita office and any other office in the U.S., or who worked remotely reporting to any FleetCor office* **under any title** *. . . at any time within the time period of (3) years prior to the filing of this Complaint or who are currently employed with FleetCor.*[4]

(Dkt. 1, ¶ 86 (emphasis added)).  Thus far, fourteen (14) individuals have filed consent forms to join this lawsuit, in addition to the named Plaintiff.  (Dkt. 4, 5, 6, 7, 8, 10, 12, 13, 15, & 23).  Acknowledging the significant overlapping of claims in

---

[4] Plaintiff lists as examples seven (7) positions he believes involve the handling of outbound or inbound calls.

this case and the *Morrison* litigation, Plaintiff expressly identified the *Morrison* litigation in the complaint as a similar lawsuit involving individuals with unpaid overtime claims against the FLEETCOR Defendants.  (Dkt. 1, ¶ 14).  Unlike the *Morrison* litigation, the FLEETCOR Defendants have not yet responded to Plaintiff's complaint, and no scheduling orders have been issued in this case.[5]

## LAW AND ARGUMENT

## I.   <u>Legal Standard – First-Filed Rule</u>

The "judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged . . .  activity." *Hoffmann-la Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989).  The first-filed rule furthers these ends.

According to the first-filed rule, when parties file parallel suits in separate courts, "the court initially seized of the controversy should hear the case."  *Collegiate Licensing Co. v. Am. Cas. Co. of Reading, Pa*., 713 F.3d 71, 78 (11th Cir. 2013).  As acknowledged by the United States Supreme Court, application of the first-filed rule promotes "wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation . . . ."  *Kerotest Mfg. Co. v. C-*

---

[5] FLEETCOR, Inc. has not been served.  Although counsel for FLEETCOR, Inc. has agreed to execute a waiver of service on behalf of FLEETCOR, Inc., Plaintiff has not yet sent counsel for FLEETCOR, Inc. documentation to effect waiver of service.

*O-Two Fire Equipment Co*., 342 U.S. 180, 183 (1952).  Indeed, a district court has "broad discretion in determining whether to stay or dismiss litigation in order to avoid" duplication.  *I.A. Durbin, Inc. v. Jefferson Nat'l Bank*, 793 F.2d 1541, 1551 (11th Cir. 1986); *see also Castillo v. Taco Bell of Am., LLC,* 960 F. Supp. 2d 401, 404 (E.D.N.Y. 2013) ("A district court has broad discretion to dismiss a lawsuit that is duplicative of a prior action.").

Although the first-filed rule is most frequently applied to cases pending in different districts, *Collegiate Licensing*, 713 F.3d at 78, it applies with equal force to parallel litigation in the same district and even litigation pending before the same judge. *Figueroa v. The Hertz Corp*., 2:19-cv-326, ECF No. 50 (M.D. Fla. Aug. 15, 2019) (dismissing second-filed FLSA action pending in same district and before same judge as earlier-filed action), attached as Exhibit A; *see also Blackwell v. Midland Credit Mgmt., Inc.*, No. 2:18-CV-2205-RMG, 2018 WL 4963166, at *3 (D.S.C. Oct. 15, 2018) (dismissing second-filed action pending in same district as earlier-filed action); *Burns v. Cty. of Nassau*, 337 F. Supp. 3d 210, 213-14 (E.D.N.Y. 2018) (rejecting plaintiff's argument that first-filed rule cannot apply to actions pending in same district); *Hartford Steam Boiler Inspection & Ins. Co. v. Menada, Inc.*, No. 1:17-CV-21465, 2017 WL 5891458, at *6 (S.D. Fla. Aug. 2, 2017) (dismissing second-file action pending in same district as earlier-filed action);

*Bodywell Nutrition, LLC v. Fortress Sys.*, LLC, 846 F. Supp. 2d 1317, 1326 (S.D. Fla. 2012) (same).  Allowing two lawsuits with overlapping issues and parties to proceed along separate tracks simply because they are pending before the same court "ignores the . . . rationales for the [first-filed] doctrine, namely, the conservation of judicial resources and promoting the efficient and comprehensive disposition of cases." *Burns,* 337 F. Supp. 3d at 213-14 (citation and internal quotations omitted); *see also Bodywell Nutrition,* 846 F. Supp. 2d at 1326 (noting that "the purpose of the first-filed rule—to avoid inconsistent verdicts—would be served by . . . applying the first-filed rule" to two cases before the same judge).

## II.     <u>The First-Filed Rule Applies Because the Two Actions Substantially Overlap</u>

Federal courts consider three factors in determining whether the first-filed rule should apply: "(1) the chronology of the actions; (2) the similarity of the parties involved; and (3) the similarity of the issues at stake." *McGarry v. Delta Air Lines, Inc.*, No. 1:18-CV-2794-TWT, 2018 WL 6928799, at *2 (N.D. Ga. Nov. 20, 2018) (citations omitted).  Importantly, the parties and issues do not need to be identical. *Id.*  Rather, "the crucial inquiry is whether the parties and issues **substantially overlap**." *Id.* (citation omitted) (emphasis added); *see also Oleg Cassini, Inc. v. Serta, Inc.*, No. 11 CIV. 8751 PAE, 2012 WL 844284, at *3 (S.D.N.Y. Mar. 13, 2012) (for the first-filed rule to apply "issues need not be identical, and the named

parties need not be entirely the same provided that they represent the same interests"). Here, all three factors weigh in favor of applying the first-filed rule because the cases substantially overlap.

### A.    The *Morrison* litigation was filed first.

There is no question that the first factor—the chronology of the two actions—is satisfied. The *Morrison* litigation was filed first on September 24, 2021, whereas this case was filed on December 2, 2021.[6] (Dkt. 1; *Morrison,* 1:21-cv-03950, ECF No. 1).

### B.    The parties in the two actions are substantially similar.

There is an exact identity of defendants in this case and the *Morrison* litigation. FLEETCOR Technologies Operating Company, LLC and FLEETCOR Technologies, Inc. are the two defendants named in both cases.

In addition, in the context of FLSA collective actions, the putative collective actions, and not the named plaintiffs, are compared to determine whether the putative

---

[6] For purposes of assessing the first-filed rule, the pertinent inquiry is "which court first obtains possession of the subject of the dispute." *McGarry*, 2018 WL 6928799 at *3 (internal citation omitted). Thus, the filing of the original complaint, and not the amended complaint, is the relevant date. However, even if the amended complaint was considered, it would relate back to the original complaint, which was filed more than two months prior to the Plaintiff's complaint here. (Dkt. 1; *Morrison,* 1:21-cv-03950, ECF No. 1).

collective actions represent at least some of the same individuals. *See, e.g., Burns v. MLK Express Servs., LLC*, No. 218CV625FTM32MRM, 2020 WL 1891175, at *3 (M.D. Fla. Apr. 16, 2020) (noting that, "[a]s the classes are currently constituted, the collective Plaintiffs are substantially identical" in the two actions); *Cook v. E.I. DuPont de Nemours & Co.*, No. 3:17-CV-00909, 2017 WL 3315637, at *3 (M.D. Tenn. Aug. 3, 2017) (noting that the "first-to-file rule in a class action suit requires the court to compare the proposed classes, not the named plaintiffs") (citations omitted); *Watson v. Jimmy John's, LLC*, No. 2:15-CV-768, 2015 WL 4132553, at *3 (S.D. Ohio July 8, 2015) (same).

While the named plaintiffs in the instant case and the *Morrison* litigation are not the same, the putative collective actions in the cases are nearly identical. The putative collective here includes all persons who, under any title, handled outbound or inbound calls for the FLEETCOR Defendants nationwide since December 2, 2018, including current employees. (Dkt. 1, ¶ 86). Morrison is a former employee who handled outbound and/or inbound calls for FLEETCOR, LLC and similarly seeks to certify a class of all current and former individuals who handled inbound calls and/or made outbound calls (referred to by Morrison as call center agents) who worked for the FLEETCOR Defendants nationwide since September 24, 2018. *Morrison,* 1:21-cv-03950-TWT, ECF No. 28.

Although the plaintiffs do not utilize identical wording to define their putative collective actions, both actions identify substantially the same individuals and, importantly, seek to notify the same individuals.  The terminology may vary, but the two putative collective definitions, when read within the context of their respective complaints, make clear that both the instant Plaintiff and Morrison are seeking to certify collectives consisting of current and former employees of the FLEETCOR Defendants who handled inbound and outbound calls.  (*Compare* Dkt. 1, ¶ 86 *with Morrison,* 1:21-cv-03950-TWT, ECF No. 28, ¶ 62).  Indeed, the majority of the job titles listed for exemplary purposes in Plaintiff's putative class definition are identified among Morrison's non-exhaustive list of job titles reflecting employees "handling inbound calls and/or making outbound calls."[7]  (*Morrison,* 1:21-cv-03950-TWT, ECF No. 28, ¶ 2, n.1).  Critically, the individuals Plaintiff seeks to represent in the instant action, including Plaintiff himself, are subsumed within the group of individuals whom Morrison seeks to represent in her putative collective.

---

[7] The fact that Morrison does not specifically list as examples every job listed by Plaintiff is of no moment.  Morrison's putative class consists of all individuals "handling inbound calls and/or making outbound calls," which encompasses all of the jobs listed by Plaintiff.  (*Morrison,* 1:21-cv-03950-TWT, ECF No. 28, ¶ 2, n.1). Indeed, in the Complaint here, Plaintiff notes that Plaintiff, "and those similarly situated, worked for FleetCor as inside sales representatives **under various and numerous job titles used interchangeably** . . . ."  (Dkt. 1, ¶ 20) (emphasis added).

The substantial overlap in the putative collective actions easily satisfies the second factor. *See, e.g., Cook*, 2017 WL 3315637 at *4 (finding that parties in two putative collective actions were "nearly identical," as they identified substantially the same employees, sought to notify the same employees, and the first-filed putative collective action would include plaintiffs and members of the second-filed putative collective action); *Posadas-Romesberg v. 24 Hour Fitness USA, Inc.*, No. 06-CV-0689 WQH (AJB), 2006 WL 8455546, at *4 (S.D. Cal. Aug. 31, 2006) (finding substantial overlap between parties in two parallel putative collective actions, as plaintiffs and putative collective action members in second-filed action were subsumed in group of individuals sought to be represented in first-filed action). While not strictly identical, there is substantial similarity, and thus substantial overlap, between the parties in this lawsuit and those in the *Morrison* litigation. This supports application of the first-filed rule and dismissal of Plaintiff's collective action claims.

      **C.**    **The issues in the two actions are substantially similar.**

              *1.*   *The claims in both actions are based on substantially similar alleged facts and involve the same issues.*

The gravamen of this action and the *Morrison* litigation is the same—the FLEETCOR Defendants failed to pay individuals handling inbound and/or outbound calls nationwide for overtime hours worked because the FLEETCOR Defendants

allegedly suffered and permitted these individuals to work off the clock. The factual allegations cited by Plaintiff and Morrison make clear that the underlying theory of their cases is the same. Plaintiffs in both cases base their claims for unpaid wages on alleged off-the-clock work, including work prior to and after employees' scheduled shifts. They also point to the similar, and in some instances identical, alleged unlawful employment policies and practices in support of their claims, including pressure from management to not record all time worked.

Morrison alleges that she and other call center agents worked off the clock prior to and after their scheduled shifts, and that the FLEETCOR Defendants used adherence and attendance policies against call center agents to discipline agents who were not ready to take calls at the beginning of their shifts. (*Morrison,* 1:21-cv-03950-TWT, ECF No. 28, ¶¶ 43, 45-47). Morrison further alleges that call center agents often worked in excess of forty hours per workweek yet were deprived of overtime pay. (*Id.* at ¶¶ 50-51). As such, Morrison seeks all "unpaid wages (and unpaid overtime if applicable) plus an additional equal amount in liquidated damages." (*Id.* at ¶ 92).

Similar to Morrison, Plaintiff in the instant action alleges that he and other current and former employees handling inbound and/or outbound calls were not paid for work performed off the clock, outside of the call center agents' scheduled shifts.

(Dkt. 1, ¶ 33).  As a result, Plaintiff alleges that he and similarly situated current and former employees "routinely worked over 40 hours without any pay or compensation, and FleetCor maintained a common unlawful practice and policy of not paying overtime wages to them."  (*Id.* at ¶ 38).  Among other relief, Plaintiff and similarly situated current and former employees are seeking a judgment entitling them "to overtime pay at one and a half times their regular rate for all unpaid overtime hours worked and for the balance of underpayment of overtime wages for all prior overtime hours worked" plus liquidated damages under the FLSA for all wages awarded.  (*Id.* at WHEREFORE Clause following ¶ 105).

While the specific tasks allegedly performed off the clock or differences with some of the call centers agents' motivations for working off the clock (e.g., pressure to meet sales quotas vs. the desire to meet adherence standards) vary slightly, the fundamental issue in both actions is the same—whether the FLEETCOR Defendants unlawfully failed (and continue to fail) to pay call center agents for all hours worked. If both actions are allowed to proceed, this question will be litigated and decided in both cases, potentially with differing results.  Applying the first-filed rule will avoid this problematic outcome.  *See, e.g., Castillo v. Taco Bell of Am., LLC*, 960 F. Supp. 2d 401, 405 (E.D.N.Y. 2013) (dismissing FLSA collective claims under the first-filed rule and collecting cases of courts dismissing second-filed FLSA action in favor

of an earlier filed similar action); *Fisher v. Rite Aid Corp.*, No. CIV.A.RDB-09-1909, 2010 WL 2332101, at *3 (D. Md. June 8, 2010) (dismissing later-filed action based on first-filed rule even though later-filed action asserted class action claims only under state law and first-filed action asserted only FLSA collective action claims).

> 2.  *Both actions allege violations of the FLSA, and federal courts routinely apply the first-filed rule to FLSA actions.*

Both Morrison and Plaintiff seek recovery of alleged unpaid wages under the FLSA based on the substantially similar factual allegations and on behalf of the same group of current and former employees.  This scenario, however, is not uncommon, and the first-filed rule is regularly invoked to streamline duplicative collective actions under the FLSA, such as these.  *See*, *e.g.*, *Castillo*, 960 F. Supp. 2d at 405 (dismissing FLSA collective claims under the first-filed rule); *LaFleur v. Dollar Tree Stores, Inc.,* No. 2:12-CV-00363, 2012 WL 4739534, at *7 (E.D. Va. Oct. 2, 2012) (dismissing duplicative FLSA collective allegations); *Copello v. Boehringer Ingelheim Pharm. Inc*., 812 F. Supp. 2d 886, 888–90 (N.D. Ill. 2011) (dismissal of plaintiff's duplicative collective action claim will "advance, not detract from, wise judicial administration"); *Lott v. Advantage Sales & Mktg. LLC*, No. 2:10-cv-00980-JEO, 2011 WL 13229682, at *6 (N.D. Ala. Jan. 26, 2011) (dismissing a later filed FLSA collective action).

Indeed, "the first-to-file rule is particularly appropriate in the context of competing FLSA collective actions, which threaten to present overlapping classes, multiple attempts at certification in two different courts, and complicated settlement negotiations. It is not surprising that federal courts consistently apply the first-to-file rule to overlapping wage and hour collective actions." *Ortiz v. Panera Bread Co.*, No. 1:10CV1424, 2011 WL 3353432, at *2 (E.D. Va. Aug. 2, 2011); *see also Akins v. Worley Catastrophe Response, LLC*, 921 F. Supp. 2d 593, 600 (E.D. La. 2013) ("[N]o purpose would be served by allowing two collective actions based on the same claims to proceed concurrently, with the attendant increased expense for defendants, the risk of confusing the group members about their legal options, the possibility of inconsistent rulings by two courts and the waste of judicial resources."). To that end, courts have found that ruling on virtually any issue in a subsequently-filed, substantially overlapping FLSA collective action, "such as the viability of the FLSA claims, how notice is disseminated to the class, or whether the collective action class will be certified beyond the conditional approval," "would cause havoc for the parties and for the state of the law." *Alvarez v. Gold Belt, LLC*, No. CIV. 08-4871 NLH KMW, 2011 WL 1337457, at *1-2 (D.N.J. Apr. 7, 2011).

*Castillo v. Taco Bell of America, LLC* serves instructive here because it demonstrates how federal courts have used the first-filed rule to address a duplicative

FLSA collective action.  960 F. Supp. 2d 401 (E.D.N.Y. 2013).  Similar to this action, *Castillo* involved a putative FLSA collective action which duplicated an earlier-filed action.  *Id*. at 402.  The court dismissed the collective claims in the later-filed action, finding that they were so substantially similar that dismissal was required.  *Id.* at 405.

First, the court compared *Castillo* to the first-filed case and concluded that the actions substantially overlapped: "[T]he classes sought to be represented in the two cases," were "identical," and "[t]he class description [wa]s the same, as [we]re the potential plaintiffs—whether or not they have decided to opt-in to" the first-filed action.  *Id*. at 404.  "[T]he relief sought—the payment of overtime compensation"— also was identical.  *Id.*  Second, the court opined that the equities favored dismissal because "it would be patently unfair to require Defendants to litigate the class issues . . . at the same time as those matters are being litigated in the first-filed action." *Id*. at 405.  Finally, the court noted that dismissal of the collective allegations would not prejudice the plaintiff.  He was "free to pursue his individual claim . . . or opt-in to become a member of the plaintiff class in" the first-filed suit.  *Id.*  The same principles and considerations require dismissal of Plaintiff's collective action allegations here.

### III.    Dismissal of Plaintiff's Collective Allegations Is the Appropriate Remedy

Dismissal of Plaintiff's collective allegations is the most judicious means of solving the problems created by this later-filed action.  Consistent with district courts' broad discretion, a court disposing of a second-filed, substantially overlapping action has a menu of options, including dismissal or stay.  *Collegiate Licensing Co.*, 713 F.3d at 78.  When determining whether to dismiss a second-filed action, courts weigh practical considerations such as promoting judicial economy.

#### A.    Dismissal is the appropriate remedy when substantially overlapping cases are pending in the same district.

When duplicative litigation is pending in the same district, as is the case here, the appropriate remedy is dismissal of the second-filed action.  *See Hartford Steam Boiler Inspection & Ins. Co.*, 2017 WL 5891458 at \*6  (citation omitted); *Hecker v. Petco Animal Supplies, Inc.*, No. 16 C 10857, 2017 WL 2461546, at \*3 (N.D. Ill. June 7, 2017) (noting the Seventh Circuit has suggested "that dismissal is a proper course of action for a district court to take in applying the first-to-file rule to duplicative actions, **at least where the actions are filed within the same district**") (emphasis added)); *Blackwell v. Midland Credit Mgmt., Inc.*, No. 2:18-CV-2205-RMG, 2018 WL 4963166 at \*3-4  (dismissing the second-filed action and noting that "the first to file rule applies even where both actions are pending in the same district"); *see also Figueroa*, 2:19-cv-326, ECF No. 50 (M.D. Fla. Aug. 15, 2019).

**B.      Dismissing Plaintiff's collective allegations will promote judicial economy while preserving Plaintiff's individual rights**.

Dismissal will promote judicial economy because it will avoid duplicative motions, hearings, and rulings. *See West Gulf Maritime Assoc. v. ILA Deep Sea Local 24,* 751 F.2d 721, 729 (5th Cir. 1985) (holding that a district court may dismiss a second-filed action "to avoid . . . duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result"). Courts have recognized that the need for judicial economy is particularly pronounced in FLSA collective actions. *LaFleur*, 2012 WL 4739534 at *8 ("To permit FLSA claims to proceed in this case . . . would be duplicative and wasteful and would directly contravene the spirit and intent of the 'first to file' rule, particularly with respect to FLSA collective actions."); *Thomas v. Apple-Metro, Inc.*, No. 14-CV-4120 VEC, 2015 WL 505384, at *4 (S.D.N.Y. Feb. 5, 2015) (concerns for "judicial economy and fairness to all parties require[d] dismissal" of the plaintiff's collective allegations). Dismissal of the collective action allegations in this duplicative, second-filed case serves judicial economy and is warranted here. Moreover, even if the collective action allegations are dismissed, Plaintiff retains his rights to pursue his claims on an individual basis.

### C.   If notice is issued, notice should not be issued twice.

Another reason to dismiss the collective allegations in this action is to avoid any risk of two notices to putative collective action members.[8] If this action proceeds with its collective action allegations, one of the most salient consequences will be the potential for duplicative notices to potential collective members in the *Morrison* litigation and here. Issuing duplicative notice would not only create a procedural quagmire—creating confusion and judicial waste—but "would also frustrate the underlying rationale for using the collective action mechanism." *Medina v. Bros. Behrman Hwy., Inc.*, No. CIV.A. 13-4831, 2015 WL 3679534, at *3 (E.D. La. June 12, 2015) (quotations omitted). In recognition of the chaos that issuing duplicative notice invites, courts have held that it is inappropriate to issue notice to the same people twice. For example, in *Castillo*, the court recognized that "[d]efendants should not be required to send a second class notice to individuals who have already received such notice . . . it is precisely such concerns that have led courts here and in other jurisdictions to dismiss or transfer second filed FLSA actions in favor of an earlier filed similar action." 960 F. Supp. 2d at 405. That risk of chaos can only be more acute here, where a potential second notice would advise the individual receiving it that he or she needs to decide whether to opt in to a case

---

[8] FLEETCOR, LLC does not admit that notice should issue at all in either case.

making the same claims and pending in the same court as notice received in an earlier case.

### D.     Other remedies are ineffective.

Dismissal of the collective allegations is the only meaningful remedy available.   For example, consolidation with the *Morrison* litigation without dismissing this case's collective action allegations would undermine judicial economy.   The Supreme Court has explained that "consolidation is permitted as a matter of convenience and economy in administration, but does not merge the suits into a single cause, or change the rights of the parties, or make those who are parties in one suit parties in another."  *Hall v. Hall*, 138 S. Ct. 1118, 1127 (2018) (citation omitted).   Thus, if the Court simply consolidates the cases without dismissing the collective allegations in this suit, it will not have achieved the judicial economies that consolidation would otherwise permit if Plaintiff's case is limited to the individual claims.   In fact, consolidation would continue the risks to judicial economy that exist now.

In *Manning v. Goldbelt Falcon, LLC*, the court rejected consolidation, noting that it would "create the possibility of two separate actions both requesting collective action certification, defeating the purpose behind such collective actions: judicial economy."  08-3427, ECF No. 38 (D.N.J. Jan. 14, 2010); *see also Alvarez v. Gold*

*Belt LLC*, No. CIV08-4871(NLH)(KMW), 2010 WL 743923, at *2 (D.N.J. Mar. 4, 2010) (declining to consolidate the substantially overlapping cases pursuant to the first-filed rule and stating, "[t]his Court never contemplated the maintenance of two identical collective actions"). The Court here should reach the same conclusion.

Aside from dismissal, the only potentially viable option might be a stay of this action pending resolution of the *Morrison* litigation. But a stay "would not foster the guiding principle of judicial economy and fairness that courts must rely upon in determining whether, and how, to apply the first-filed rule." *Thomas*, 2015 WL 505384 at *5. Staying this action and "[r]etaining jurisdiction of the collective action claims would require the Court to reexamine, albeit at a later date, many of the same issues to be decided in the [first-filed] action[]." *Id.* A stay, in other words, will only prolong the resolution of this duplicative case. Dismissal of the collective action allegations in this case is the proper remedy.

## IV. No Compelling Circumstances Exist to Warrant Departure From the First-Filed Rule

A party can only avoid application of the first-filed rule by demonstrating "compelling circumstances." *Mann Mfg., Inc. v. Hortex, Inc.*, 439 F.2d 403, 407 (5th Cir. 1971). No compelling circumstances exist here.

That fourteen individuals have opted-in to this action is not compelling. This is especially true since those individuals and Plaintiff can opt-in to the *Morrison*

litigation.  *See LaFleur,* 2012 WL 4739534 at *8 ("[O]utright dismissal is appropriate as Plaintiffs and any putative collective members can opt-in to the [first-filed] action."); *Castillo*, 960 F. Supp. 2d at 405 (dismissing the second-filed suit and noting that "Plaintiff is free to pursue his individual claim in the context of this lawsuit, or opt-in to become a member of the plaintiff class in" the first-filed lawsuit); *Alvarez*, 2011 WL 1337457 at *1  ("If the [first-filed] action is certified as a collective action, plaintiff will have the choice to either opt-in, or to continue with his own action separately.  If the [first-filed] action is not certified, then plaintiff may continue his own action, but not as a collective action, unless he can demonstrate a reason otherwise.").

The opt-in plaintiffs in this case are no worse off with the collective action claims being dismissed, and dismissal of the collective allegations will not jeopardize Plaintiff's ability to pursue his claims individually or to opt in to the *Morrison* litigation, as he chooses.  Thus, no compelling circumstances exist here to prevent application of the first-filed rule.

## CONCLUSION

For the foregoing reasons, FLEETCOR, LLC respectfully requests that this Court dismiss Plaintiff's collective action allegations.

Dated:  February 22, 2022

PARKER, HUDSON,                              */s/ Paul R. Barsness*
RAINER & DOBBS LLP                          Paul R. Barsness
303 Peachtree Street, N.E.                  Georgia Bar No. 597107
Suite 3600                                  prb@phrd.com
Atlanta, Georgia 30308
Telephone: (404) 523-5300                   Local Counsel for Defendant
Facsimile: (404) 522-8409

                                            -AND-

PHELPS DUNBAR LLP                           Susan W. Furr
II City Plaza                               Louisiana Bar No. 19582
400 Convention Street                       susie.furr@phelps.com
Suite 1100                                  Jessica C. Huffman
Post Office Box 4412                         Louisiana Bar No. 30445
Baton Rouge, Louisiana  70802               huffmanj@phelps.com
Telephone: (225) 346-0285                   (admitted pro hac vice)
Facsimile: (225) 381-9197

                                            -AND-

PHELPS DUNBAR LLP                           Dennis M. McClelland
100 South Ashley Drive                      Florida Bar No. 0091758
Suite 1900                                  dennis.mcclelland@phelps.com
Tampa, Florida  33602                       Jason A. Pill
Telephone: (813) 472-7550                   Florida Bar No. 0070284
Facsimile: (813) 472-7570                   jason.pill@phelps.com
                                            (admitted pro hac vice)

                                            Lead Counsel for Defendant

## CERTIFICATE OF COMPLIANCE

I hereby certify that, pursuant to Local Rule 7.1(D), the foregoing motion and incorporated memorandum of law has been prepared in times New Roman, 14-point font, in conformance with Local Rule 5.1(C).

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 22, 2022, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will electronically serve the following:

Mitchell Lloyd Feldman
Feldman Legal Group
1201 Peachtree Street, N.E.
Second Floor
Atlanta, Georgia  30361
mfeldman@flandgatrialattorneys.com

*/s/ Paul R. Barsness*
Attorney